# UNITED STATES DISTRICT COURT FOR THE
# SOUTHERN DISTRICT OF FLORIDA

---

YAMEL GONZALEZ, individually and on behalf of all others similarly situated,

                Plaintiff,

against

CHRISTAL TRANSPORT, LLC and
ORALDO SOSA

                Defendants.

0:21 Civ. 60278 UNGARO/REID

---

## MOTION FOR CONDITIONAL CERTIFICATION FOR DISCLOSURE OF CONTACT INFORMATION AND TO SEND NOTICES AND INCORPORATED MEMORANDUM OF LAW

YAMEL GONZALEZ, individually and on behalf of all others similarly situated, by his attorneys at Black Law P.A., hereby respectfully moves this Honorable Court to:

1) To conditionally certify the above-action as a collective action under the Fair Labor Standards Act with the proposed collective described as:

   **All truck drivers who worked for Christal Transport, LLC at any time after February 2, 2018.**

2) To compel production by Defendants, within 15 days of the Court order granting conditional certification, of a complete list of each and every person – and their last known mailing address, email address, and telephone number – who was employed, by Defendant as a truck driver as described above.

3) To authorize Plaintiff's counsel mailing of a Court-approved Notice to all such persons of their right to opt into this collective action by filing a Consent to Join Lawsuit in the proposed forms attached hereto and incorporated herein by references in Section III(B) *infra*; and

4) To grant any such other relief the Court deems just and proper.

This Honorable Court should grant this motion for the reasons set forth below:

## I. INTRODUCTION AND CORE LAW

Plaintiff's claim is for unpaid overtime under the Fair Labor Standards Act ("FLSA"). Plaintiff was an intrastate truck driver for the Defendants, and was never paid overtime because he was misclassified an independent contractor. The Court has already set a trial date and pretrial deadlines. [ECF No. 17]. Defendants were engaged in interstate commerce for the purposes of the FLSA in that Plaintiff handled and delivered materials that traveled in interstate commerce, and Defendants' business regularly processed credit and banking transactions involving out of state and foreign financial institutions. Further, Defendants' gross sales were not less than $500,000.00.

The FLSA was enacted to ensure that every employee receives a "fair day's pay for a fair day's work." *A.H. Phillips v. Walling*, 324 U.S 490, 493 (quoting address to Congress by Franklin E. Roosevelt in 1937). In light of the FLSA's broad remedial purposes, the FLSA is to be liberally construed to apply the furthest reaches of Congress's intention. *Biggs v. Wilson*, 1 F.3d 1537 (9th Cir. 1993). The FLSA requires that employees are paid a minimum wage for work, and that employees working more than forty hours a week receive overtime compensation, specifically time and a half for all hours over forty, i.e. 1.5 times their regular rate of pay." 29 U.S.C. § 207(a)(1)(e); 29 C.F.R. § 778.108. This law also applies to workers who were misclassified as independent contractors by an employer.

29 U.S.C. § 216(b) provides an "opt-in" collective actions for similarly situated employees*. See Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1258 (11th Cir.

2008). The lawsuit does not become a collective action unless other plaintiffs affirmatively opt into the class by giving written notice of a filed consent. *See Cameron-Grant v. Maxim Healthcare Services, Inc.*, 347 F.3d 1240, 1249 (11th Cir. 2003).

The Eleventh Circuit undergoes a two-stage approach for certifying FLSA collective actions. *Hipp v. Liberty Nat. Life Ins.*, 252 F.3d at 1217 (11th Cir. 2001). In the first stage, the district court should evaluate the case under a lenient standard. *Morgan*, 551 F.3d at 1260. In the second stage, the Court would re-evaluate the similarly situated question after discovery produces more information regarding the claims made by the Plaintiff. *Id.* During both stages, the Court analyzes whether similarly situated employees exist, who could opt-in. *Id.*

In the first stage, the Court reviews the pleadings and affidavits to determine whether notice of the action should be given to other potential class members – this is known as "conditional certification." *Hipp*, 252 F.3d at 1217. Conditional certification can be rebutted and re-examined by the Court after discovery. *Id.* During the first stage, the Court analyzes conditional certification liberally, although the Plaintiff must show a "reasonable basis" for his claim that there are similarly situated employees. *Morgan*, 551 F.3d at 1260.

The Eleventh Circuit has not set a bright line test in defining similarly situated, but has held that as more "legally significant differences appear among opt-ins, the less likely it is that the group of employees is similarly situated." *Morgan*, 551 F.3d at 1261. Courts in the Southern District of Florida regularly consider five factors in determining whether plaintiffs are similarly situated 1) plaintiffs have the same job title, 2) whether they worked in the same geographic location; 3) when and how the FLSA violations

3

occur, and 4) whether the plaintiffs were subject to the same rules and policies for their employer; and 5) whether the actions that constitute the violations claimed by Plaintiffs are similar. *Lara v. G&E Fla. Contr., LLC*, 2015 WL 4760678 at *4 (S.D. Fla. July 21, 2015), citing *Smith v. Tradesmen, Int.'l*, 289 F.Supp 1369, 1372 (S.D. Fla 2003).

At the notice stage, the court is not tasked with making legal findings on factual issues or focus on whether an actual violation of the law occurred. *See Dozier v. DBI Serv., LLC*, 2020 WL 881698 at *2 (M.D. Fla. February 24, 2020). The plaintiff's burden here is lenient and may be met with a reasonable showing supported by affidavits. *Id.*, citing *Morgan*, 551 F.3d at 1260.

## II. FACTUAL BACKGROUND

Plaintiff worked as a truck driver for Defendants from 2011 until March 2019. See Yamel Gonzalez Affidavit, attached as Exhibit "1," at ¶2. Defendants only held an intrastate license with the Department of Transportation. *Id.* at ¶3. Defendants classified Plaintiff, and all other truck drivers, as independent contractors. *Id.* at ¶8. During this time frame, all of the drivers' job duties were performed within the State of Florida. *Id.* at ¶3. The company has its drivers engaged in handling, selling, or otherwise working with materials that have been moved in and produced for commerce. *Id.* at ¶4.

There were many other truck drivers that worked for Defendants throughout his tenure there, and Defendants continue to employ truck drivers and classify them as independent contractors. Ex. 1 at ¶21. Plaintiff, and other drivers, worked more than 40+ per week. *Id.* at ¶2. Due to the classification of being an independent contractor, Plaintiff never received overtime pay. *Id.* at ¶8. Plaintiff has spoken to at least two

other drivers interested in joining this lawsuit, and believes that more will join this lawsuit, if given the opportunity. *Id.* at ¶20.

Plaintiff did not control his schedule, his pay rate, or any other aspect of his employment. Ex. 1 at ¶¶5-19. Defendant provided all the tools and material necessary for Plaintiff to carry on with his job, including the truck he drove, the insurance on the vehicles, and fuel/tolls and maintenance for the trucks. *Id.* at ¶¶13-19. The only opportunity Plaintiff had for making more money was to work faster or work longer hours. *Id.* at ¶16. Defendants were Plaintiff's only employer from 2011 until 2019; he was not permitted to work for anyone else. *Id.* at ¶17. This was true for the other drivers who worked for Defendants. *Id.* at ¶16. Beyond possessing a commercial driver license, there is no specializing training or skill that goes into the job. *Id.* at ¶19.

Defendants' entire business revolves around the drivers; without the drivers' services, Defendants would not be able to conduct its business – i.e. transporting construction materials to various locations throughout the State of Florida. Plaintiff, and other similarly situated drivers, entire compensation came from Defendants and Defendants solely controlled their ability for profit and/or loss. Ex. 1 at ¶4.

### III. ARGUMENT

A. <u>The Court Should Conditionally Certify the Proposed Collective as a Collective Action for Notice Purposes</u>:

This case is currently in the first stage of the two-tiered FLSA certification analysis. The determination as to whether Plaintiff has met his burden of demonstrating that there are similarly situated employees who desire to opt in is lenient. *See Morgan,* 551 F.3d 1233 at 1261. Based on this lenient standard, and because courts do not resolve fact disputes at this phase, courts regularly grant conditional certification based

5

solely upon a plaintiff's complaint and supporting affidavits. *Gibbs v. MLK Express Services, et al.*, 2019 WL 2635746 at *4 (M.D. Fla. June 27, 2019); *Rojas v. Uber Technologies, Inc.*, 2017 WL 2790543 at *3 (S.D. Fla. June 27, 2017). Further, as noted in the pleadings and in the attached affidavit of Yamel Gonzalez, Plaintiff attests that there are other similarly situated individuals who want to opt in. Plaintiff represents a collective of workers who were misclassified as individual contractors and worked as drivers for Defendants. Every collective member's relationship with Defendants were subject to the Defendants' universal practices, which violated FLSA law, amongst other tax code violations and issues.

To the extent that factual disputes arise over whether the employees are similarly situated, these factual disputes should be resolved during the second stage, after discovery and do not constitute a valid basis for denying conditional certification. *See Carmody v. Fla. Ctr. for Recovery, Inc.*, 2006 WL 3666964 at *4 (S.D. Fla. Nov. 8, 2006). The phrase "similarly situated" is interpreted broadly to include all affected employees who may have an interest in the lawsuit. In other words, "similarly situated" means similarly situated with respect to the legal, and to a lesser extent, the factual issues to be determined. The prospective class must raise similar legal issues concerning non-payment of overtime or minimum wages. However, their situations do not have to be identical. *Id.*

Here, Defendants were responsible for classifying its drivers appropriately as employees versus independent contractors. Instead, Defendants labeled all drivers independent contractors, and failed to pay them overtime as required by the law. All the drivers were paid the same way at the same rate and were labeled independent

contractors. This should be enough for the court to certify the action. To impose a strict standard of proof on the plaintiff at this phase would unnecessarily hinder the broad remedial goals of the FLSA. In sum, because of Defendants' policies and procedures, instrastate truck drivers (who delivered materials that effected interstate commerce) were not paid lawful overtime wages of one and half (1.5) times their regularly rates for all hours over forty (40) per week. These practices are what underlie Plaintiff's allegations that Defendants have violated the overtime wage provisions of the FLSA with respect to Plaintiff and all other truck driver employees. Plaintiff estimates that Defendants have employed at least 10-15 other drivers since February 3, 2018, some of whom would be interested in joining this lawsuit. *See Ex*. 1, at ¶ 21.

The allegations made by Plaintiffs establish that the members of the proposed collective are similarly situated for purposes of conditionally certifying the case and providing the collective members with notice and opportunity to join this action. Defendants' policies and practices, as described above, are uniformly applicable to Plaintiff and the members of the collective, making this case ideally suited for conditional certification. Therefore, the Court should certify the collective of truck drivers and make appropriate orders for the distribution of the notice.

> B. <u>The Court Should Approve Plaintiff's Proposed Collective Action Notice and Consent Form, Grant Leave for Plaintiff to Send Notice through U.S. Mail and Email, and Order Defendants to Provide Contact Information for Potential Opt-ins</u>.

After the Court grants conditional certification for notice purposes, the Court will need to make decisions about how to facilitate notice. The Court has broad discretion to facilitate notice. Accordingly, the Court should exercise its broad discretion and approve Plaintiff's proposed mail Notice (Exhibit 2), Mail Consent Form (Exhibit 3), and

Follow-up Postcard (Exhibit 4) for distribution to the collective via U.S. Mail.  Plaintiff further requests that this Court 1) grant a period of ninety (90) days in which to distribute the Notice and Consents and allow for opt-ins to file a Consent to Joint; 2) grant leave to send the Follow-Up Post Card thirty days after the initial mailing of the Notice; 3) approve the form and content of the text of the emails containing the Notice (Exhibit 5) and Email Consent Form (Exhibit 6) and make appropriate order to send them via email; and 4) order Defendants to provide the relevant names and contact information of current and former members of the collective.

> 1. *This Court has Broad Discretion to Issue Orders that Facilitate Early Notice to Potential Members of the Collective Action.*

In furtherance of the FLSA "broad remedial" purpose, courts have the authority to notify potential opt-in plaintiffs that they may join an existing action early in the proceeding. *Tyson Foods, Inc. v. Bouaphake*o, 136 S.Ct. 1036, 1047 (2016); *Guerra v. Big Johson Concrete Pumping, Inc.*, 2006 WL 2290512 at *4 (S.D. Fla. May 17, 2006). Collective actions provide workers an opportunity to "lower individual costs to vindicate rights by pooling resources," and enable the efficient resolution in one proceeding of common issues of law and fact."  *Hoffman-La Roche, Inc. v. Sperling*, 493 U.S. 165, 170 (1989).

A district court has broad discretion as it relates to the details in the notice sent out to the potential collective.  *See generally, Hubbard v. Jerry's Seamless Guttering*, 2020 WL 6038110 at *2 (S.D. Fla. Oct. 6, 2020). Notice informs potential plaintiffs of facts needed to make an informed whether to opt-in.  While there are no well-defined rules for the form of notice, the general requirement is that the notice is fair and accurate.  *See Guerra*, 2006 WL 2290512 at *5.

Plaintiff's proposed FLSA collective action notice plan provides employees with an accurate description of the lawsuit, their legal rights, and the process for participating in the case.  It should be approved.  As discussed in more detail below, Plaintiff requests to send notice by paper and for a 90-day opt-in period and by email. Plaintiff also requests to send a follow up postcard and a reminder email thirty (30) days after notice is sent.  Finally, Plaintiff seeks an order directing Defendants to provide the names and contact information of all potential collective members.

      **i.**      **The Court should approve Plaintiff's proposed collective action mail notice, mail consent form and set a ninety-day opt-in period.**

Plaintiff asks this Court for approval to send notice to all individuals who worked as truck driver for Defendants at any time after February 3, 2018, which includes the three years preceding the filing of Plaintiff's complaint.  This captures every qualified truck driver for Defendants who could potential fall within the maximum three-year statute of limitations under the FLSA.  Further, this keeps the door open for this Court to grant equitable tolling to some or all potential plaintiffs if the facts support it.[1]  To facilitate this request, Plaintiff requests for approval of Plaintiff's proposed notice-related documents, method of distribution, and 90-day opt-in period.

The Court should approve Plaintiff's proposed collective action Mail Notice (Ex. 2) and Consent to Join  (Ex. 3) to be sent through United States mail.  The mail version of the Notice (Ex. 2) and Consent to Join (Ex. 3) proposed by Plaintiff provides a fair and accurate description of the class and would further the remedial goals of the FLSA and promote judicial efficiency.

---

[1] The doctrine of equitable tolling can toll the statute of limitations in FLSA cases.  *See, e.g., Justice v. United States*, 6 F.3d 1474, 1479 (11th Cir. 1993).

9

Plaintiff also requests a period of ninety (90) during which to distribute notice and file opt-in plaintiffs' consent forms with the Court. *See Campbell v. Pincer's Beach Bar Grill, Inc.*, 2016 WL 3626219 at *7 (S.D. Fla. July 7, 2016) (holding courts routinely allow 90-day opt-in period); *Alequin v. Darden Rests, Inc.*, 2013 WL 3939373 at *8 (S.D. Fla. July 12, 2013).

      ii.    **This Court should approve Plaintiffs' proposed procedure for distributing the Notice and Consent form via email**.

Courts already approve of the use of email as part of the multi-platform method of distributing notice. *See Dean v. W. Aviation, LLC*, 2018 WL 1083497 at *6 (S.D. Fla. Feb. 28, 2018); *Williams v. Coventry Health Care of Fla., Inc.*, 2016 WL 7013530 at *2 (M.D. Fla. Oct. 4, 2016). To facilitate notice via electronic mail, this Court should approve of Plaintiff's proposed procedure for disseminating notice by email, which is simple and easy for the Court to monitor. As part of this process, the Court should approve Plaintiff's means of sending an electronic notice version of the Notice (Exhibit. 5) and Consent to Join (Exhibit 6), and obtaining electronic signatures through software located at www.rightsignature.com.[2] Decl. of Kelsey Black (Black Decl., attached as Exhibit 7.) The Court should approve the language that Plaintiff intends to use in the body of the email containing the Notice and the link to the Consent to Join, as reflected in Exhibits 5 and 6. Plaintiff's counsel's email includes a link to www.rightsignature.com, where the recipient can access an electronic version of the Consent to Join and gives

---

[2] RightSignature is a subscription Internet service that allows Plaintiff's counsel to send PDF documents to collective members' email addresses, which they can open on their smartphones and/or computers and sign with their finger or mouse. Ex. 6 at ¶__. More information about RightSignature is available at https://rightsignature.com/how-it-works/send. Florida courts have already approved use of electronic signatures generally. *Kraft v. Freight Handlers, Inc.,* 2019 WL 3854989 at *6 (M.D. Fla. May 21, 2019); Fla Stat. § 668.004.

instructions for signing the Consent electronically to avoid some minor but common mistakes.  See Ex. 7 at ¶ 13-14.

From the link, collective members may print the Notice or read it in electronic form.  Putative class members who wish to join the lawsuit could then choose to print, sign and return a paper copy of the Consent to Joint form or electronically sign the Consent to Join form using the RightSignature service.  This is similar to the process used in other United States District Courts in Florida.  See *Harapeti v. CBS Tele. Stations, Inc.,* 2020 WL 8083695 at *7 (S.D. Fla. Dec. 21, 2020*); Metzler v. Medical Manag. Int'l*, 2020 WL 1674310 at *6 (M.D. Fla. March 4, 2020); *Kraft v. Freight Handlers, Inc.,* 2019 WL 3854989 at *6 (M.D. Fla. May 21, 2019); *Roberson v. Rest. Delivery Developers*, LLC, 2017 WL 4124862 (M.D. Fla. Sept. 27, 2017).

### iii. The Court should approve the sending of the Follow-up Postcard via U.S. Mail and a reminder email thirty (30) days after Notice is sent.

Plaintiff further request that this Court permit the sending of a Follow-Up Postcard, via U.S. Mail to potential opt-ins who did not respond within thirty (30) days of sending Notice.  The Follow-Up Postcard would be sent thirty (30) days after the Notice is first distributed via U.S. Mail.  Allowing Plaintiff's counsel to send the Follow-Up Postcard provides a fair and equitable solution to ensure that all members who want to join the lawsuit are able to, including ensuring collective members whose consents were mailed (or electronically submitted) but not received are made aware of this fact.  See Ex. 7 at ¶¶ 4-7.  District courts in the Southern District of Florida approve of this procedure. *See Shaw v. Set Enterprises, Inc.*, 2016 WL 10593592 at *3 (S.D. Fla Dec. 6, 2016).  The Follow-Up Post Card should be approved.

Mail delivery problems are unavoidable in collective actions. See Decl. Black at See Ex. 7 at ¶¶ 4-8. Courts have routinely approved of sending follow-up postcard reminders by mail and email. Such follow-up reminders contribute to dissemination among similarly situated employees and serve what the Supreme Court in *Hoffmann-La Roche* recognized as Section 216(b)'s "legitimate goal of avoiding a multiplicity of duplicative suits and setting cutoff dates to expedite disposition of the action." 493 U.S. at 172. Courts around the country, including in Florida, have recognized the usefulness of a reminder notice. *See Shaw,* 2016 WL 10593592 at *3; *Martin v. Budd Props, Inc.*, 2018 WL 6521475 at *5 (M.D. Ga. April 27, 2018); *Chhab v. Darden Rest., Inc.*, 2013 WL 5308004 at *16 (S.D. NY Sept. 20, 2013). Accordingly, the reminder postcard and email are similarly appropriate here.

### iv. The Court should order Defendants to provide the names, last known mailing address, telephone numbers, and email addresses of the collective.

To facilitate sending the Notice and Consent to Join, this Court should order Defendants to provide the names and contact information for collective members. Plaintiffs ask this Court to provide for the following information no later than seven (7) days after entry of an Order certifying the case for a collection action for each individual who meets the collective definition: (1) full legal name, including any aliases he or she may have gone by or goes by now; (2) the last known mailing address; (3) the last known telephone number; and (4) any and all email addresses of which Defendants are aware for each individual. This information is in the Defendants' possession, not Plaintiff.

## IV. CONCLUSION

Plaintiff has met the lenient burden imposed on him at the conditional stage. Because Defendants' policies that underlie Plaintiff's allegations in the FLSA violations are the same for Plaintiff and all of the collective members, Plaintiff and the collective members are similarly situated as victims of a common policy or practice of the employer that affected all collective members in a similar fashion.  Accordingly, the Court should certify the collective as requested by Plaintiff.  Plaintiff further respectfully request that this Court:  (1) order Defendants to produce the contact information of those collective members (name, address, telephone number and email addresses) in electronic form no later than one week from the entry of the order granting this motion; (2) approve of the form and contents on Exhibits 2-6; (3) approve notice through U.S. Mail and email; (4) approve the sending of the follow-up Postcard via U.S. mail and a reminder email; and (5) grant counsel a period of ninety (90) days from the date Defendants fully and completely release the collective members' contact information during which to distribute the notice and to file the Consent to Join forms.

Dated:   March 25, 2021

Respectfully submitted,
BLACK LAW P.A.

*/s/ Kelsey K. Black, Esq.*
Kelsey Black, Fla. Bar No. 079825
Cody Shilling, Fla. Bar No. 1010122
1401 E. Broward Blvd., Ste. 204
Fort Lauderdale, FL 33301
954-320-6220
kelsey@kkbpa.com; cs@kkbpa.com
Attorneys for Plaintiff
